**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
------------------------------x
                              :
JANE DOE                      :    Civ. No. 3:19CV01649(SALM)
                              :
v.                            :
                              :
UNITED STATES OF AMERICA,     :
et al.                        :    March 28, 2022
                              :
------------------------------x
```

<u>**RULING ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**</u>

Plaintiff Jane Doe brought this action in five counts, naming six defendants: the United States of America; the U.S. Department of Homeland Security ("DHS"); Kevin McAleenan, in his official capacity as the Acting Secretary of DHS; U.S. Immigration and Customs Enforcement ("ICE"); Matthew T. Albence, in his official capacity as Acting Director of ICE; and Wilfredo Rodriguez, in his individual and official capacities ("Rodriguez"). See generally Doc. #1.[1] The first five defendants are represented by the Department of Justice, and are collectively referred to herein as the Government Defendants.

Count One brings a claim for Assault and Battery, pursuant to the Federal Tort Claims Act, 28 U.S.C. §§1346(b), 2671-80 ("FTCA"), against the United States. See id. at 13-14. Count Two

---

[1] Pursuant to Fed. R. Civ. P. 25(d), the Court subsequently substituted Alejandro Mayorkas, Secretary, DHS, and Tae Johnson, Acting Director, ICE, as defendants in place of McAleenan and Albence. See Doc. #68.

brings a claim for Intentional Infliction of Emotional Distress pursuant to the FTCA against the United States. See id. at 14-15. Count Three brings a claim for violation of plaintiff's rights under the Fourth Amendment to the United States Constitution, against Rodriguez. See id. at 15. Count Four brings a claim for violation of plaintiff's equal protection rights under the Fifth Amendment to the United States Constitution, against Rodriguez. See id. at 15-16. Count Five brings a state law claim for negligence against ICE and DHS. See id. at 16-18.[2]

Pursuant to Federal Rule of Civil Procedure 56(a), the Government Defendants move for summary judgment on Counts One, Two, and Five of the Complaint. See Doc. #69 (Government Defendants' motion for summary judgment). Defendant Rodriguez moves for summary judgment on Counts Three and Four of the Complaint. See Doc. #74 (defendant Rodriguez's motion for summary judgment). For the reasons set forth below, defendants' motions are **GRANTED.**

I.   **Background**

The following facts are derived from the parties' submissions pursuant to Local Rule 56(a) and the affidavits,

---

[2] Although the Complaint names McAleenan and Albence as defendants in the caption, none of the counts in the Complaint are directed at these defendants.

declarations, and exhibits attached thereto.

Defendant Rodriguez is a former ICE officer. See Doc. #71 at 2, ¶1; Doc. #82 at 1, ¶1. Plaintiff Jane Doe "claims that [Rodriguez] began sexually assault[ing] and threaten[ing]" her in 2007. Doc. #71 at 2, ¶1; Doc. #82 at 1, ¶1. These assaults continued until 2014, when plaintiff "suffered a work accident" and "believed that Rodriguez was going to retire in the near future." Doc. #71 at 2, ¶¶4-5; Doc. #82 at 2, ¶¶4-5. Throughout that seven-year period, "Plaintiff threatened Rodriguez with disclosing the assaults, and she considered telling another deportation officer about Rodriguez's actions." Doc. #71 at 2, ¶3; Doc. #82 at 2, ¶3. Despite these threats, however, plaintiff did not "file an anonymous report about Rodriguez. She did not report the alleged assaults to any medical provider, to her attorney, or to anyone at all. She never asked to be transferred away from Rodriguez, or to a different ICE office." Doc. #71 at 2-3, ¶8 (citations to the record omitted); Doc. #82 at 2-3, ¶8.

"Plaintiff first disclosed the alleged sexual assaults by Rodriguez to ICE officers in May of 2018." Doc. #71 at 2, ¶6; Doc. #82 at 2, ¶6. "Plaintiff presented an administrative claim to DHS on July 10, 2018." Doc. #71 at 3, ¶10; Doc. #82 at 3, ¶10. "Plaintiff did not pursue her rights from 2007 until her presentment of her administrative claim on July 10, 2018." Doc. #71 at 3, ¶11; Doc. #82 at 3, ¶11. Without citing record

evidence, plaintiff argues that she did not report the assaults earlier because she "was afraid for her life and that of her family's[.]" Doc. #83 at 6 (sic).

Plaintiff brought this action on October 19, 2019. See Doc. #1. Defendants filed their motions for summary judgment on April 30, 2021, contending that plaintiff's claims are barred by the applicable statutes of limitations. See Doc. #69, Doc. #74. Plaintiff filed responses to defendants' motions on June 14, 2021, contending that the doctrine of equitable tolling applies, and prevents the matter from being time-barred. See Doc. #81, Doc. #83. This matter was transferred to the undersigned on October 21, 2021. See Doc. #85.

## II.  **Legal Standard**

> The standards governing summary judgment are well-settled. Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)[.]

Marvel Characters, Inc. v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002). Summary judgment is proper if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"The party seeking summary judgment has the burden to

demonstrate that no genuine issue of material fact exists." Marvel Characters, Inc., 310 F.3d at 286. "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).

In deciding a motion for summary judgment, the Court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (citation and quotation marks omitted). "If there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied." Am. Home Assur. Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 315 (2d Cir. 2006) (citation and quotation marks omitted).

## III. **Discussion**

All defendants move for summary judgment on multiple grounds, including that the claims brought by plaintiff are barred by the applicable statutes of limitations. Because the Court finds this issue dispositive, it need not reach the parties' other arguments.

### A.    Statute of Limitations -- FTCA

The three claims brought against the Government Defendants sound in tort, and therefore are governed by the FTCA. "As a precondition for suit under the FTCA, an administrative claim must be filed with the responsible federal agency within two years of a plaintiff's alleged injury." Torres v. United States, 612 F. App'x 37, 39 (2d Cir. 2015).

The Supreme Court has held that "the FTCA's time bars are nonjurisdictional and subject to equitable tolling." United States v. Wong, 575 U.S. 402, 420 (2015).

### B.    Statute of Limitations -- **Bivens**

Before turning to the analysis of the limitations period applicable to plaintiff's claims against Rodriguez, the Court pauses to clarify the nature of those claims.

Plaintiff brings two "Federal Constitutional Claim[s]" against Rodriguez for violations of the Fourth Amendment and Fifth Amendment. Doc. #1 at 15. Rodriguez was, at the time of the alleged events, a federal employee. See id. at 3, ¶12. Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971), sets forth "a judicially-created remedy designed to provide individuals with a cause of action against federal officials who have violated their constitutional rights." Higzay v. Templeton, 505 F.3d 161, 169 (2d Cir. 2007). Plaintiff does not refer to Bivens in the Complaint. However,

"[a]lthough not styled as such," the Court construes plaintiff's constitutional claims against defendant Rodriguez "as asserting causes of action under" Bivens. Offer v. Mercy Med. Ctr., No. 17CV01872(NRB), 2018 WL 2947971, at *5 (S.D.N.Y. May 31, 2018).

The parties are not prejudiced by the Court's construction of plaintiff's claims against Rodriguez as being brought pursuant to Bivens. The parties do not mention Bivens in their briefing on Rodriguez's motion. See Doc. #75, Doc. #83. Rather, defendant Rodriguez asserts: "Through [plaintiff's allegations], the Plaintiff has made a claim under 42 U.S.C. §1983." Doc. #75 at 2. However, because plaintiff claims that defendant Rodriguez was a federal official, rather than a state official, see Doc. #1 at 3, her claims are properly analyzed under Bivens. See Shue v. United States, 466 F. App'x 51, 51 (2d Cir. 2012) (summary order) ("[Plaintiff]'s constitutional claims against federal officials are properly analyzed as claims pursuant to Bivens ... rather than 42 U.S.C. §1983."). The parties' timeliness arguments are unaffected by this confusion in the briefing, because "Bivens and §1983 actions [are] governed by identical statute[s] of limitations[.]" Varon v. Sawyer, No. 3:04CV02049(RNC), 2007 WL 2217085, at *2 n.3 (D. Conn. July 30, 2007) (citing Chin v. Bowen, 833 F.2d 21, 23-24 (2d Cir. 1987)). Indeed, as is true of claims brought pursuant to Section 1983, "[f]ederal courts look to state law when determining the statute

of limitations ... applicable to Bivens claims." Brown v.
Greene, No. 11CV04917(BMC), 2012 WL 911560, at *2 (E.D.N.Y. Mar.
16, 2012); see also Leonhard v. United States, 633 F.2d 599,
616-17 (2d Cir. 1980) ("[F]or both Bivens-type actions and §1983
actions we must borrow the most appropriate state statutes of
limitations.").

    "Under Connecticut General Statute §52-577, the applicable
statute of limitations for a Bivens action is three years from
the point of accrual." Bakowski v. Kurimai, 387 F. App'x 10, 11
(2d Cir. 2003). "While state law supplies the statute of
limitations period, federal law determines when a federal claim
accrues." Kronisch v. United States, 150 F.3d 112, 123 (2d Cir.
1998) (citation and quotation marks omitted). "A Bivens claim
accrues under federal law for statute of limitations purposes
when a plaintiff either has knowledge of his or her claim or has
enough information that a reasonable person would investigate
and discover the existence of a claim." Gonzalez v. Hasty, 802
F.3d 212, 220 (2d Cir. 2015). There does not appear to be any
dispute in this matter regarding the date on which plaintiff's
claims accrued.

    While federal law governs a Bivens claim's accrual date,
the Supreme Court has "generally referred to state law for
tolling rules, just as [it has] for the length of statutes of
limitations." Wallace v. Kato, 549 U.S. 384, 394 (2007); see

also Brown, 2012 WL 911560, at *2 ("Federal courts look to state law when determining the ... tolling rules applicable to Bivens claims."). "Because no federal statute of limitations governs, federal courts routinely measure the timeliness of federal civil rights suits by state law." Hardin v. Straub, 490 U.S. 536, 538, (1989). That includes deference to the limitations period itself, and "the coordinate tolling rules[,]" which are "binding rules of law." Bd. of Regents of Univ. of State of N.Y. v. Tomanio, 446 U.S. 478, 484 (1980). Thus, federal courts "should not unravel state limitations rules unless their full application would defeat the goals of the federal statute at issue." Hardin, 490 U.S. at 539. Consequently, when determining whether the statute of limitations for a Bivens claim may be tolled, "to the extent not inconsistent with the policies underlying the federal claims, [a federal court] must borrow any restrictions placed by the state on the running of the statutes." Leonhard, 633 F.2d at 617.

The Second Circuit has found that "the possibility that equitable tolling might apply [to section 52-577] is foreclosed by Connecticut precedent, which establishes [section] 52-577 as a statute of repose not susceptible to equitable tolling." Gerena v. Korb, 617 F.3d 197, 206 (2d Cir. 2010); see also Carter v. Univ. of Conn., No. 3:04CV01625(SRU), 2006 WL 2130730, at *3 (D. Conn. July 28, 2006) ("Section 52-577 of the

Connecticut General Statutes, the borrowed statute of limitations applicable in this case, has apparently never been held by an appellate court of Connecticut to be subject to the doctrine of equitable tolling."), aff'd, 264 F. App'x 111 (2d Cir. 2008).[3] Thus, equitable tolling does not apply to plaintiff's Bivens claims unless the application of Connecticut's tolling principles would be "inconsistent with the policies" underlying those claims. The undersigned sees no basis on which to believe it would be, and plaintiff makes no argument that it is. In an analogous context, the Second Circuit has enforced Connecticut's prohibition on the equitable tolling of Section 52-577 as applied to a civil rights claim under Title VI, finding that "the goals of Title VI would not be thwarted by the application of Connecticut's tolling principles[.]" Carter, 264 F. App'x at 112.

_____

[3] While the Second Circuit has found that equitable tolling is not available for claims applying Section 52-577, some courts have concluded that the statute of limitations for claims governed by "section 52-577 may be tolled under the continuous course of conduct doctrine or due to fraudulent concealment." Speer v. Norwich Pub. Util., No. 3:19CV02005(JCH), 2021 WL 1978702, at *4 (D. Conn. May 18, 2021) (citing Tunick v. Tunick, 242 A.3d 1011, 1027-38 (Conn. App. Ct. 2020)), aff'd, Speer v. Norwich Pub. Util., No. 21-1353-cv, 2022 WL 852968 (2d Cir. Mar. 23, 2022). Plaintiff does not contend that either doctrine applies in this case. See generally Doc. #83. Rather, as previously noted, the parties agree that Rodriguez's allegedly tortious and unconstitutional conduct ended in 2014. See Doc. #71 at 2, ¶¶4-5; Doc. #82 at 2, ¶¶4-5.

The Court does not find that the goals of Bivens would be thwarted by the application of Connecticut's tolling rules, and is mindful that those rules are entitled to substantial deference. See, e.g., Hardin, 490 U.S. at 539. In any event, this Court need not decide whether to set aside the Connecticut prohibition on equitable tolling under 52-577, because even if it is available, equitable tolling is unwarranted in this case.

### C.   Equitable Tolling Standard

"Equitable tolling applies only in the rare and exceptional circumstance." Bertin v. United States, 478 F.3d 489, 494 n.3 (2d Cir. 2007) (citation and quotation marks omitted).

"The equitable tolling doctrine does not come into play, of course, until the defendant has claimed that the plaintiff's cause is time barred. The burden then shifts to the plaintiff to demonstrate that the statute should be tolled." Clute v. Davenport Co., 584 F. Supp. 1562, 1579 (D. Conn. 1984) (citation and quotation marks omitted).

"[T]he burden of proving that tolling is appropriate rests on the plaintiff." Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 512 (2d Cir. 2002). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Rosario v. Brennan, 197 F. Supp. 3d 406, 412

(D. Conn. 2016) (citation and quotation marks omitted).[4] "The term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period." Hardie v. United States, 501 F. Supp. 3d 152, 161 (E.D.N.Y. 2020) (citations and quotation marks omitted), aff'd, 859 F. App'x 612 (2d Cir. 2021).

### D.   Analysis –– Equitable Tolling

The same equitable tolling analysis applies to both the FTCA and Bivens counts; accordingly, the Court evaluates the issue as to all counts together.

There is no dispute that plaintiff first presented her administrative claim on July 10, 2018. See Doc. #82 at 3, ¶11. She filed the instant action on October 19, 2019. See Doc. #1. The sexual assaults alleged in the complaint "ended in 2014[.]" Doc. #82 at 2, ¶4. Even assuming the assaults did not end until December 31, 2014, and that the cause of action did not accrue until the end of the course of conduct, the FTCA two-year limitations period would have run on December 31, 2016, and the Bivens three-year limitations period would have run on December

---

[4] The Complaint asserts in a conclusory fashion that "equitable tolling applies" and that "threats against Plaintiff and her family by Rodriguez constitute an extraordinary manner by which Plaintiff was prevented from timely asserting her rights." Doc. #1 at 18. The Complaint makes no allegations regarding plaintiff's diligence in pursuing relief.

31, 2017, well before plaintiff presented her FTCA claim or filed this action.

Plaintiff does not contest that the limitations periods had expired before she took action. See Doc. #81 at 6-8, Doc. #83 at 6-7. Rather, plaintiff relies entirely on the equitable tolling doctrine to save her claims. See id. Plaintiff dedicates fewer than two pages of her memorandum in opposition to each motion for summary judgment to the issue of equitable tolling, and the arguments set forth in each memorandum on this issue are identical. See id.

As noted, to invoke equitable tolling for her FTCA claims, plaintiff must show both that (1) "she diligently attempted to comply with the presentment requirement" and that (2) an "extraordinary circumstance stood in her way." Rosario, 197 F. Supp. 3d at 412-13. Similarly, for equitable tolling to apply to plaintiff's claims brought under Bivens, "the court must determine that plaintiff: '(1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply.'" Varon, 2007 WL 2217085, at *2 (quoting Zerilli-Edelglass v. N.Y. Cty. Transit Auth., 333 F.3d 74, 80-81 (2d Cir. 2003), as amended (July 29, 2003)).

Plaintiff argues that she "was afraid for her life and that of her family's, which is why she did not retain an attorney to

pursue this case" earlier. Doc. #83 at 6 (sic). Plaintiff does not cite to any evidence of record in support of this argument.[5] Construing the facts in favor of the non-moving party, as it must, the Court notes the following facts asserted by plaintiff, which could conceivably support this argument:

- "Rodriguez carried a gun as part of his employment with ICE, and handcuff and arrest illegal aliens." Doc. #82 at 7, ¶33 (sic).

- "During the period between 2007 and 2014 Jane Doe was threatened by Rodriguez with deportation of herself and her family and death." Doc. #82 at 8, ¶37.

- "Shortly before Rodriguez was to retire from ICE, he threatened to kill Jane Doe if she ever told anyone about what had happened." Doc. #82 at 8, ¶38.

- "Rodriguez threatened Jane Doe's husband after he found out that Rodriguez had raped Jane Doe." Doc. #82 at 8, ¶41.

Plaintiff cites a handful of cases in support of her argument, most of which are either inapposite or unhelpful to her cause. Plaintiff cites <u>Gager v. Sanger</u>, No. X02-CV03-

---

[5] Plaintiff also cites in her memorandum in opposition to "SOF ¶23, 24" to support her claim that "during the period between 2007 and 2014 [Rodriguez] threatened plaintiff's life and threatened her and her family with deportation[.]" Doc. #83 at 7. Assuming this is intended to reference plaintiff's Rule 56(a)(2) Statement, those paragraphs do not support a claim of threats against plaintiff or her family. <u>See</u> Doc. #82 at 5, ¶23, ¶24.

0182451-S, 2005 WL 758032 (Conn. Super. Ct. Feb. 25, 2005),
aff'd, 897 A.2d 704 (Conn. App. Ct. 2006), in which the Superior
Court observed that in a narrow category of "administrative
employment discrimination cases," equitable tolling had been
found appropriate where "the employer bore responsibility for
some form of impediment that prevented or made it difficult for
the plaintiff to file earlier." Id. at *2. The Superior Court
found equitable tolling inapplicable in that case.

Plaintiff asserts that "Connecticut courts have applied
equitable tolling in situations where a plaintiff can show he
'(2) was prevented in some extraordinary manner from timely
asserting his rights[,]'" citing "Bates v. City of Bristol, 2018
U.S. Dist. LEXIS 49687[.]" Doc. #83 at 6. The Court has
identified the case plaintiff appears to be citing, but that
language does not appear in the decision. See Bates v. City of
Bristol, No. 3:17CV01066(MPS), 2018 WL 1472523 (D. Conn. Mar.
26, 2018). In the Bates decision, Judge Shea found that
equitable tolling was not warranted, and noted that under
Connecticut law, "there is a strong tendency not to apply the
doctrine of equitable tolling when a party is represented by an
attorney[.]" Id. at *8 (citation and quotation marks omitted).
Plaintiff was actively represented by counsel during at least
some of the relevant time period, but she did not disclose the
assaults to her attorney. See Doc. #82 at 3-4, ¶8; Doc. #81, Ex.

F-1, at 79-80.

Podobnik v. U.S. Postal Serv., 409 F.3d 584 (3d Cir. 2005), also cited by plaintiff, has been abrogated on other grounds. See Rotkiske v. Klemm, 890 F.3d 422, 428 (3d Cir. 2018), aff'd, 140 S. Ct. 355 (2019). In any event, the Third Circuit found "no basis to equitably toll the limitations period" in that matter. Podobnik, 409 F.3d at 591. The Supreme Court did find that equitable tolling was appropriate in Young v. United States, 535 U.S. 43, 49 (2002), cited without commentary by plaintiff, but that was in a unique situation involving overlapping bankruptcy petitions. Neither of these cases is helpful to plaintiff.

Plaintiff relies most heavily on a Southern District of New York case, Noguera, involving "a female inmate who brought an action under 42 U.S.C. §1983 alleging that she had been raped and sexually abused by a state correctional officer." Doc. #83 at 6. The Court in Noguera found that equitable tolling was appropriate, with an important limitation: "The Court equitably tolls the statutes of limitations in this action until May 22, 1999, when Smith [the defendant correctional officer] resigned from his position at the MCC." Noguera v. Hasty, No. 99CV08786(KMW)(AJP), 2001 WL 243535, at *5 (S.D.N.Y. Mar. 12, 2001). The Court found that tolling was appropriate because plaintiff had provided

evidence that she reasonably feared that publicly

> asserting her claims against Smith would jeopardize her safety. Smith held a high rank at the MCC, and had allegedly attempted to intimidate plaintiff into maintaining silence by verbal threats and physically intimidating behavior. Plaintiff reasonably believed that she would be at risk if she took action beyond her complaints to various prison officials. Consequently, the Court finds that plaintiff's delay in filing this action **until after Smith resigned from the MCC** was justifiable, and that plaintiff's failure to file this action within the statutory period was not the result of a lack of diligence on her part.

Id. at *6 (citation to the record omitted) (emphases added).

Applying that approach in this case, the limitations period would be deemed tolled only until Rodriguez retired. It is undisputed that plaintiff believed in 2014 that "Rodriguez was going to retire [from ICE] in the near future[,]" Doc. #82 at 2, ¶5, and that the assaults ended that year, see id. at 2, ¶3. Yet, plaintiff did not take action until July 2018, more than three years later. Thus, "it cannot be said that plaintiff was deterred from pursuing her claims because of intimidation or harassment." Varon, 2007 WL 2217085, at *3 (distinguishing Noguera).

The other two cases cited by plaintiff are Ninth Circuit opinions from the 1990s. One, Alvarez-Machain v. United States, involved a Mexican national who was allegedly abducted and tortured by "a team of men alleged to be hired by DEA agents working in Mexico," held under a false name, and tried on murder charges in Los Angeles. Alvarez-Machain v. United States, 107

F.3d 696, 699 (9th Cir. 1996).[6] The criminal charges against plaintiff were dismissed by the District Court, based on the illegal abduction of plaintiff from Mexico, but after a reversal by the Supreme Court,[7] the charges were reinstated for trial. See id. Plaintiff was acquitted of all charges on December 14, 1992, and approximately six months later, he filed an FTCA claim for tort claims, including kidnapping, and §1983 claims, including false arrest and false imprisonment. See id. The Ninth Circuit observed that the §1983 claims had not accrued until the date plaintiff was acquitted, and thus were not time-barred, and concluded that equitable tolling should apply to save the other claims. See id. at 700-01. "Looking at the totality of these circumstances, we conclude that Alvarez-Machain's case constitutes that rare situation where equitable tolling is demanded by sound legal principles as well as the interests of justice." Id. at 701.

The instant case involves allegations of truly horrific

---

[6] The Alvarez-Machain cases had a long and tortured path through the court system, including multiple trips to the Supreme Court. After a bench trial on the civil claims, the District Court "found Plaintiff's testimony incredible." Alvarez-Machain v. United States, No. 93CV04072(SVW)(SHX), 2004 WL 5394005, at *2 (C.D. Cal. Oct. 26, 2004).

[7] "The fact of respondent's forcible abduction does not therefore prohibit his trial in a court in the United States for violations of the criminal laws of the United States." United States v. Alvarez-Machain, 504 U.S. 655, 670 (1992).

conduct. In that way, it shares features of Alvarez-Machain. But the facts directly relating to the question of tolling here differ in important ways from the facts of Alvarez-Machain. Alvarez-Machain was incarcerated, in a foreign land, for years;[8] Jane Doe was in the community. Jane Doe did not complain of Rodriguez's conduct from 2007 to 2018, though she had an attorney; as a result, the government had no notice of her claims. In contrast, Alvarez-Machain not only reported his abduction and torture immediately, the issue was argued all the way to the Supreme Court, such that the government was clearly on notice of his claims. Once the immediate risk of retribution passed, when Rodriguez retired, Jane Doe nonetheless failed to bring a claim for nearly four years. Alvarez-Machain, on the other hand, filed a claim within approximately six months of his acquittal, release, and return to Mexico. In sum, the Court does not find Alvarez-Machain apposite or persuasive in this case.

Finally, plaintiff cites to Brockamp v. United States, 67 F.3d 260 (9th Cir. 1995). See Doc. #83 at 7. This Ninth Circuit decision applying equitable tolling to the Internal Revenue Code was reversed by the Supreme Court, see United States v. Brockamp, 519 U.S. 347 (1997), and thus is not good law.[9] Even if

---

[8] See id. at 701 ("Alvarez-Machain was incarcerated for over two years[.]").

[9] Plaintiff's brief does not acknowledge the overruling.

it were, however, it is not persuasive or relevant here.
Brockamp involved a 93-year-old man who was allegedly mentally
incompetent at the time he made an overpayment to the IRS. See
Brockamp, 67 F.3d at 261. The Ninth Circuit "remand[ed] for
further proceedings regarding [plaintiff's] mental competency."
Id. at 263. Plaintiff does not assert that she was mentally
incompetent at any time. Rather, she asserts: "Jane Doe got
pregnant and was depressed and tried to commit suicide multiple
times as a result of Rodriguez raping her and treating her like
a slave." Doc. #82 at 9, ¶44. Such a claim, without "a
particularized description of how her condition adversely
affected her capacity to function generally or in relationship
to the pursuit of her rights, is manifestly insufficient to
justify any further inquiry into tolling." Boos v. Runyon, 201
F.3d 178, 185 (2d Cir. 2000). Furthermore, "Connecticut law will
only toll the statute of limitations for mental illness if the
plaintiff was adjudged incompetent." Lawrence v. Hartford Police
Dep't, No. 3:17CV01138(SRU), 2017 WL 6380640, at *1 (D. Conn.
Aug. 24, 2017).

Plaintiff, who bears the burden of establishing the basis
for equitable tolling, has not provided evidence of any
extraordinary circumstances after the retirement of Rodriguez in
2014 that would have prevented her from bringing a claim. She
has not provided evidence that she acted with diligence in

pursuing her claims. To the contrary, the undisputed evidence clearly establishes that plaintiff was in regular contact with doctors and lawyers, but failed to report the abuse she now alleges. See, e.g., Doc. #76-1 at 7-8; Doc. #77 at 7-8, 15-16; Doc. #82 at 2-3, ¶8. The government had no notice of her claims against Rodriguez until May 2018. See Doc. #82 at 2, ¶6. Plaintiff's belated disclosure at that time appears to have been related to the risk that her father would be deported.[10] When plaintiff described her decision to report the assault to ICE officers, she explained that she decided to tell them everything once she saw her father being restrained:

> [Plaintiff] And, well, what I told them was that I was going to talk with the lawyer, but I did tell them that I had been assaulted by -- by an officer. One of the officers gave me a card, that if I decided to talk with them, that I should call him. And -- and if I had been assaulted, they told me that I should look at it with my attorney.
>
> [Question] And did you do that?

---

[10] Plaintiff disputes that her decision to inform ICE of the assaults was related to her father's potential deportation because "plaintiff was contacted by the defendants who sought to meet with her and she had made no affirmative attempt to contact defendants even though her fatherhad been pursuin relief to prevent his removal from the United States." Doc. #82 at 2, ¶7 (sic). Plaintiff's unsupported denial is belied by her deposition testimony, however, in which she testified that she reported the assaults to ICE officers because "I was not going to allow my father to be deported to Honduras because I knew that if he went to Honduras, he was going to be killed[.]" Doc. #78 at 5. Therefore, plaintiff's "unsupported allegations do not create a material issue of fact." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).

[Plaintiff] Yes, I did do that when I saw that my father
was tied up by his -- -- yes, I did when I saw my father
that he was tied on his foot, because he had a bracelet.

Doc. #81-6 at 123. Thus, it does not appear that plaintiff chose
to break her silence because she suddenly felt that Rodriguez's
threat to her or her family passed. Rather, plaintiff's
testimony suggests that her decision to bring her claims was
triggered by the risk that her father would be deported.

Finally, the Court observes that even if Rodriguez's
threats constituted an extraordinary circumstance barring
plaintiff from acting, and even if that extraordinary
circumstance continued after his retirement, and after the
assaults ended, plaintiff has not alleged or produced evidence
to support a finding that she acted with diligence. Thus,
plaintiff has failed to establish that the statute of
limitations for her claims should be equitably tolled, and her
claims are therefore time-barred.

To be sure, the conduct alleged in this case is truly
horrifying. However, "[a] statute of limitations ... represents
a pervasive legislative judgment that it is unjust to fail to
put the adversary on notice to defend within a specified period
of time and that the right to be free of stale claims in time
comes to prevail over the right to prosecute them." Messa v.
Goord, 652 F.3d 305, 309-10 (2d Cir. 2011) (citations and
quotation marks omitted). Limitations periods "protect

defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise." United States v. Kubrick, 444 U.S. 111, 117 (1979). As to the FTCA limitations period, the Supreme Court has explained:

> Section 2401(b), the limitations provision involved here, is the balance struck by Congress in the context of tort claims against the Government; and we are not free to construe it so as to defeat its obvious purpose, which is to encourage the prompt presentation of claims. We should regard the plea of limitations as a meritorious defense, in itself serving a public interest.

> We should also have in mind that the Act waives the immunity of the United States and that in construing the statute of limitations, which is a condition of that waiver, we should not take it upon ourselves to extend the waiver beyond that which Congress intended.

Id. at 117-18 (citations and quotation marks omitted). The Court must honor that balance in this case. Accordingly, because plaintiff's claims are time-barred and are not subject to equitable tolling, defendants' Motions for Summary Judgment are hereby **GRANTED.**

## IV. <u>Conclusion</u>

The Court finds that defendants have established that no genuine issue of material fact exists as to whether plaintiff's claims are barred by the applicable statutes of limitations or subject to equitable tolling. Accordingly, summary judgment is granted as to all claims, against all defendants.

Judgment shall enter in favor of the defendants.

The Clerk shall close this case.

It is so ordered this 28th day of March, 2022, at New Haven, Connecticut.

/s/
_____
HON. SARAH A. L. MERRIAM
UNITED STATES DISTRICT JUDGE